MORGAN, LEWIS & BOCKIUS LLP
Andrew P. Frederick, Bar No. 284832
1400 Page Mill Road
Palo Alto, CA  94304
Tel:     +1.650.843.4000
Fax:    +1.650.843.4001
andrew.frederick@morganlewis.com

MORGAN, LEWIS & BOCKIUS LLP
Joseph Lewis, Bar No. 316770
One Market, Spear Street Tower
San Francisco, California 94105-1596
Telephone: +1.415.442.1000
Facsimile:  +1.415.442.1001
joseph.lewis@morganlewis.com

Attorneys for Defendants
JANCO FS 2, LLC, JANCO FS 3, LLC, and
JANCO FS 4, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SENORINA VALENCIA AYALA, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JANCO FS 3, LLC, a limited liability company; JANCO FS 2, LLC, a limited liability company; JANCO FS 4, LLC, a limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>[San Mateo County Sup. Court Case No. 24-CIV-01002]<br><br>**NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT BY DEFENDANTS**<br><br>[28 U.S.C. §§ 1332, 1441 and 1446] |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. _____

NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT BY DEFENDANTS

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF SENORINA VALENCIA AYALA AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendants JanCo FS 2, LLC, JanCo FS 3, LLC, and JanCo FS 4, LLC ("Defendants") remove the above-entitled action from the Superior Court of California in and for the County of San Mateo to the United States District Court for the Northern District of California. In support of removal, Defendants state the following:

**I.    PLEADINGS, PROCESS AND ORDERS**

1. On or about February 21, 2024, Plaintiff Senorina Valencia Ayala ("Plaintiff") filed an unverified Complaint in the Superior Court of the State of California in and for the County of San Mateo, entitled *Senorina Valencia Ayala, individually, and on behalf of all others similarly situated, v. JANCO FS 3, LLC, a limited liability company; JANCO FS 2, LLC, a limited liability company; JANCO FS 4, LLC, a limited liability company; and DOES 1 through 10, inclusive,* Case No. 24-CIV-01002 (the "Complaint").

2. Plaintiff's Complaint alleges eight (8) causes of action against Defendants: (1) failure to pay minimum wages; (2) failure to pay overtime; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) failure to indemnify necessary business expenses; (6) failure to timely pay final wages; (7) failure to provide accurate itemized wage statements; and (8) unfair business practices.

3. On or about March 6, 2024, Plaintiff caused the Summons, Complaint, and Civil Case Cover Sheet and other case initiating documents to be served on Defendants. Attached as **Exhibit 1** is a true and correct copy of the Complaint and attached as **Exhibit 2** is a true and correct copy of the Summons and other case initiating documents. These documents are incorporated by reference.

4. On March 8, 2024, Plaintiff caused to be served on Defendants a Notice of Court's Case Management Order #1. Attached as **Exhibit 3** is a true and correct copy of this notice, which is incorporated by reference.

5.     On April 2, 2024, Defendants caused their Answer to Plaintiff's Complaint to be filed and served.  A true and correct copy of Defendants' Answer is attached as **Exhibit 4**, which is incorporated by reference.

6.     Exhibits 1 through 4 constitute all the pleadings, process and orders served upon or by Defendants, or filed, in the Superior Court action.

## II.  THE REMOVAL IS TIMELY

7.     This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) because it is being filed within thirty (30) days of the service of the Complaint upon Defendants.

8.     No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III.  THIS COURT HAS DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332(a)

9.     This action is a civil action over which the Court has original diversity jurisdiction pursuant to 28 U.S.C. § 1332 and is one which may be removed by Defendants pursuant to 28 U.S.C. § 1441(a) and (b) in that the amount in controversy exceeds $75,000, exclusive of interest and costs; the action involves citizens of different states; and no properly joined defendant is a citizen of California.[1]

### A.  Complete Diversity of Citizenship Exists.

10.    A case may be heard in federal court under diversity jurisdiction if there is complete diversity, *i.e.*, all plaintiffs are diverse from all defendants.  28 U.S.C. § 1332(a).  A defendant may remove an action to federal court under 28 U.S.C. § 1332, provided no defendant is a citizen of the same state in which the action was brought or of the same state in which the plaintiff is a citizen.  28 U.S.C. § 1441(a), (b).

11.    Here, all requirements are met because Plaintiff is a citizen of California, while Defendants are citizens of Delaware, Florida, Georgia, Nevada, and New York.

---

[1] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint.  Defendants maintain that each of Plaintiff's claims is without merit, and Defendants are not liable to Plaintiff.  No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or actually could recover any damages based upon the allegations contained in the Complaint or otherwise.  "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability."  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Silicon Valley

2                              Case No. _____
NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT BY DEFENDANTS

### 1. **Plaintiff Is a Citizen of California.**

12. "An individual is a citizen of the state in which he is domiciled…." *Boon v. Allstate Ins. Co.*, 229 F. Supp.2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265, F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

13. Continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3rd Cir. 2011); *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994). At all times relevant to this action, Plaintiff alleges she was a resident of California and worked for Defendants in the County of San Mateo. *See* Compl., ¶ 7. Plaintiff does not allege that she was a citizen of any state other than California and there is no indication that Plaintiff was a citizen of states other than California at any time relevant to the Complaint. Thus, Plaintiff is domiciled in the State of California and therefore is a citizen of a California for purposes of diversity jurisdiction in this matter.

### 2. **Defendants Are Citizens of Delaware, Florida, Georgia, Nevada, and New York.**

14. Defendants are limited liability companies, which are treated the same as unincorporated associations for purposes of citizenship. *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). "Notwithstanding LLCs' corporate traits, however, every circuit that has addressed the question treats them like partnerships for purposes of diversity jurisdiction." *See id.* (*citing Gen. Tech. Applications, Inc. v. Exro Ltda.*, 388 F.3d 114, 120 (4th Cir. 2004); *GMAC Commercial Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828-29 (8th Cir. 2004); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004); *Handelsman v. Bedford Village Assocs. Ltd P'ship*, 213 F.3d 48, 51 (2d Cir. 2000); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998)).

15. Therefore, for purposes of diversity jurisdiction, the corporate citizenship rule does not apply to LLCs. *See* 28 U.S.C. § 1332(c). Instead, the Ninth Circuit looks to the citizenship of

each of the LLC's members.  *See Johnson*, 437 F.3d at 899; *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 189 (1990).  Consistent with its sister circuits, the Ninth Circuit has held that, like a partnership, an LLC is a citizen of every state of which its owners/members are citizens. *Johnson*, 437 F.3d at 899; *Lindley Contours, LLC v. AABB Fitness Holdings, Inc.*, 414 Fed. App'x 62 (9th Cir. 2011).  "If a member of an LLC is a corporation, then the state of incorporation and its principal place of business must be shown." *Carleu v. FCA US LLC*, 2016 WL 304295, at *1 (C.D. Cal. Jan. 25, 2016).

16. Since February 21, 2024, when Plaintiff commenced this action, Defendants have been Delaware limited liability companies, with their principal place of business in Atlanta, Georgia, and therefore citizens of Delaware and Georgia.

17. Since February 21, 2024, JanCo FS 2, LLC has consisted of two members, JanCo FS 1, LLC and Frank A. Argenbright Jr.

18. Since February 21, 2024, JanCo FS 1, LLC has been a Delaware limited liability company, with its principal place of business in Atlanta, Georgia and therefore a citizen of Delaware and Georgia.  During this time, JanCo FS 1, LLC has consisted of two members: Frank A. Argenbright, Jr. and the Hunter B. Argenbright and Descendants Nevada Trust.

19. Since February 21, 2024, JanCo FS 3, LLC and JanCo FS 4, LLC have consisted of a sole member: JanCo Facility Services, LLC.

20. Since February 21, 2024, JanCo Facility Services, LLC has been a Delaware limited liability company, with its principal place of business in Atlanta, Georgia and therefore a citizen of Delaware and Georgia.  During this time, JanCo Facility Services, LLC has consisted of a sole member, Argenbright Holdings V, LLC.

21.  Since February 21, 2024, Argenbright Holdings V, LLC has been a Delaware limited liability company, with its principal place of business in Atlanta, Georgia and therefore a citizen of Delaware and Georgia.  During this time, Argenbright Holdings V, LLC has consisted of a sole member, Argenbright Master Holding, LLC.

22. Since February 21, 2024, Argenbright Master Holding, LLC has been a Delaware limited liability company, with its principal place of business in Atlanta, Georgia and therefore a

citizen of Delaware and Georgia.  During this time, Argenbright Master Holding, LLC has consisted of three members: Frank A. Argenbright, Jr., The Sarah Blythe Argenbright and Descendants Nevada Trust, and The Hunter B. Argenbright and Descendants Nevada Trust.

23.    Since February 21, 2024, Frank A. Argenbright, Jr. has resided and been domiciled in Florida and therefore has been a citizen of Florida during this time.

24.    Since February 21, 2024, the co-trustees of The Sarah Blythe Argenbright and Descendants Nevada Trust, which was formed in Nevada, have been the Alliance Trust Company of Nevada, Karan Ishwar, and Sarah B. Argenbright.  *See Johnson*, 437 F.3d at 899 ("A trust has the citizenship of its trustee or trustees.").  The Alliance Trust Company of Nevada was formed in Nevada and has Reno, Nevada, as its principal place of business.  Thus, for diversity purposes, the Alliance Trust Company of Nevada is a citizen of Nevada.  Karan Ishwar and Sarah B. Argenbright are individuals who have resided and have been domiciled in Georgia since February 21, 2024, thereby making them citizens of Georgia for diversity purposes.

25.    Since February 21, 2024, the co-trustees of The Hunter B. Argenbright and Descendants Nevada Trust, which was formed in Nevada, have been the Alliance Trust Company of Nevada, Karan Ishwar, and Hunter B. Argenbright.  The Alliance Trust Company of Nevada was formed in Nevada and has Reno, Nevada, as its principal place of business.  Thus, for diversity purposes, the Alliance Trust Company of Nevada is a citizen of Nevada.  Karan Ishwar is an individual who has resided and has been domiciled in Georgia since February 21, 2024, thereby making her a citizen of Georgia for diversity purposes.  Hunter B. Argenbright is an individual who has resided and has been domiciled in New York since February 21, 2024, thereby making him a citizen of New York for diversity purposes.

26.    The Complaint also names as Defendants "DOES 1-10."  The citizenship of fictitious "Doe" defendants, however, is disregarded for removal purposes.  28 U.S.C. § 1441(a); *see also Soliman v. Philip Morris, Inc.*, 311 F.3d 966, 971 (9th Cir. 2002).

27.    Based on the Complaint, therefore, Plaintiff is a citizen of California, while Defendants are citizens of Delaware, Florida, Georgia, Nevada, and New York.  Accordingly, complete diversity of citizenship exists.

**B.      The Amount in Controversy Exceeds $75,000**

28.     While Defendants deny any and all liability to Plaintiff, based on a conservative good faith estimate of the value of the alleged damages in this action, the amount in controversy for Plaintiff's claims exceeds the sum or value of $75,000, exclusive of interest and costs.  The "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014).  "[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." *Id.*, quoting H.R. Rep. No. 112–10, p. 16 (2011).

29.     In determining whether a complaint meets the $75,000 threshold amount in controversy set forth in 28 U.S.C. § 1332(a), courts are to consider the aggregate amount of the claims and value of the claims. *Campbell v. Hartford Life Ins. Co.*, 825 F. Supp. 2d 1005, 1008 (E.D. Cal. 2011) (diversity statute confers jurisdiction over entire action, not just specific claims alleged in complaint, and, therefore, claims of a plaintiff are aggregated in order to satisfy amount in controversy).  The fact that a complaint fails to specify the total amount of damages in a dollar amount does not deprive a court of jurisdiction. *See Banta v. Am. Med. Response Inc.*, 2011 U.S. Dist. LEXIS 77558, at *4 (C.D. Cal. July 15, 2011) (defendant may remove suit to federal court notwithstanding the failure of plaintiff to plead a specific dollar amount in controversy; if the rules were otherwise, "any plaintiff could avoid removal simply by declining to place a specific dollar claim upon its claim").

30.     In the Complaint, Plaintiff alleges that Defendants failed to provide meal periods, failed to provide rest periods, failed to pay all wages, failed to provide accurate, itemized wage statements, failed to pay all final wages, failed to reimburse business expenses, failed to pay overtime, and engaged in unfair business practices.

**1.      Plaintiff's Meal Break Claim Places at Least $1,886 in Controversy**

31.     In the Complaint, Plaintiff alleges that "Defendants have wrongfully failed to provide Plaintiff and the Class with legally compliant meal periods." Compl., ¶ 16.  Plaintiff

further alleges, "Defendants sometimes, but not always, required Plaintiff and the Class to work in excess of five consecutive hours a day without providing a 30-minute, continuous and uninterrupted, duty-free meal period for every five hours of work, or without compensating Plaintiff and the Class for meal periods that were not provided by the end of the fifth hour of work or tenth hour of work," and "Defendants also did not adequately inform Plaintiff and the Class of their right to take a meal period by the end of the fifth hour of work, or for shifts greater than 10 hours, by the end of the tenth hour of work. Accordingly, Defendants' policy and practice was to not provide meal periods to Plaintiff and the Class in compliance with California law." *Id.*

32. Under California law, employers must "provide" their employees with a 30-minute, uninterrupted meal period before the end of the fifth hour of work. Cal. Lab. Code § 512. If an employer fails to provide a meal break, then the employer must pay the employee a premium wage equal to one hour of pay for each non-compliant break. Cal. Lab. Code § 226.7; *Brinker v. Superior Court*, 53 Cal. 4th 1004 (2012).

33. Plaintiff allegedly worked for Defendants from approximately July 1, 2022 through May 23, 2023, a total of approximately 46 weeks.

34. Based upon Plaintiff's allegations, Defendants reasonably assume that Plaintiff seeks at least 2 hours of premium pay for allegedly non-compliant meal periods per workweek. As such, the amount in controversy as to Plaintiff's meal period claim based on Plaintiff's allegations is approximately **$1,886** (Plaintiff's average hourly rate of $20.50 x 2 hours of premium pay per workweek x 46 workweeks).

**2.  Plaintiff's Rest Break Claim Places at Least $1,886 in Controversy**

35. In the Complaint, Plaintiff alleges that "Defendants have wrongfully failed to authorize and permit Plaintiff and the Class to take timely and duty-free rest periods." Compl., ¶ 17. Plaintiff further alleges that "Defendants sometimes, but not always, required Plaintiff and the Class to work in excess of four consecutive hours a day without Defendants authorizing and permitting them to take a 10-minute, continuous and uninterrupted, rest period for every four hours of work (or major fraction of four hours), or without compensating Plaintiff and the Class

for rest periods that were not authorized or permitted." *Id.* Plaintiff further alleges that "Defendants also did not adequately inform Plaintiff and the Class of their right to take a rest period. Moreover, Defendants did not have adequate policies or practices permitting or authorizing rest periods for Plaintiff and the Class, nor did Defendants have adequate policies or practices regarding the timing of rest periods. Defendants also did not have adequate policies or practices to verify whether Plaintiff and the Class were taking their required rest periods." *Id.*

36. Under California law, employers must "authorize and permit" employees to take a 10-minute, uninterrupted rest period for every four hours worked or major fraction thereof. Cal. IWC Wage Order 9-2001, § 12. If an employer fails to provide a rest break, then the employer must pay the employee a premium wage equal to one hour of pay for each non-compliant break. Cal. Labor Code §226.7; *Brinker v. Superior Court*, 53 Cal. 4th 1004 (2012).

37. Based upon Plaintiff's allegations, Defendants reasonably assume that Plaintiff seeks 2 hours of premium pay per workweek for alleged missed rest breaks. As such, the amount in controversy as to Plaintiff's meal period claim based on Plaintiff's allegations is approximately **$1,886** (Plaintiff's average hourly rate of $20.50 x 2 hours of premium pay per workweek x 46 workweeks).

### 3.    Plaintiff's Overtime Claim Places at Least $3,536.25 in Controversy

38. In the Complaint, Plaintiff alleges that "Defendants maintained a policy and practice of not paying Plaintiff and the Class for all hours worked, including all overtime wages." Compl., ¶ 15. "Plaintiff and the Class were required to work off the clock, and uncompensated. For example, Plaintiff and the Class were required to clock into work, which sometimes takes substantial time due to faultiness of the system, leading to off the clock work. . . . Plaintiff and the Class were also required to clock out and often travel to other locations, without receiving compensation for that travel time." *Id.*

39. Based on Plaintiff's allegations, Defendants reasonably assume that Plaintiff seeks at least 30 minutes of overtime per day, which results in 2.5 hours of overtime per week. As such, Plaintiff's unpaid overtime claim places approximately **$3,536.25** in controversy ((Plaintiff's average hourly rate of $20.50 x 1.5) x 2.5 hours per week x 46 weeks).

### 4. Plaintiff's Waiting Time Penalties Claim Places at Least $5,100.00 in Controversy

40. In the Complaint, Plaintiff alleges that "during the relevant time period, Defendants failed, and continue to fail to pay terminated Class Members, without abatement, all wages required to be paid by California Labor Code sections 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ." Compl., ¶ 62. Accordingly, Plaintiff alleges that she is entitled to waiting time penalties under Labor Code section 203. *Id.* at ¶ 65.

41. Based upon Plaintiff's allegations, Defendants reasonably assume that she seeks the following amount in waiting time penalties: **$5,100** ($21.25 (final pay rate) x 8 hours a day x 30 days).

### 5. Plaintiff's Claim for Inaccurate Wage Statements Places $550.00 in Controversy

42. In the Complaint, Plaintiff alleges that "Defendants failed to furnish Plaintiff and the Class with accurate, itemized wage statements showing all applicable hourly rates, and all gross and net wages earned (including correct hours worked, correct wages earned for hours worked, correct overtime hours worked, correct wages for meal periods that were not provided in accordance with California law, correct wages for rest periods that were not authorized and permitted to take in accordance with California law, and Defendant's address)." Compl., ¶ 19. Plaintiff seeks statutory damages pursuant to Labor Code § 226(e). *Id*.

43. Labor Code section 226(e) provides that an employee is entitled to recover the greater of all actual damages or $50 for the initial alleged violation and $100 for each alleged subsequent violation, up to a maximum of $4,000, plus costs and reasonable attorneys' fees, if an employer knowingly and intentionally fails to provide an accurate, itemized wage statement. Cal. Lab. Code § 226(e).

44. During the year before filing her Complaint, Plaintiff received approximately 6 wage statements. Based upon Plaintiff's allegations, Plaintiff's wage statement claim places $550 in controversy [($50 for the initial pay period) + (5 subsequent pay periods x $100 for subsequent

violations).

### 6. Plaintiff's Claim for Attorneys' Fees Places at Least $82,500.00 in Controversy

45. Plaintiff seeks to recover attorneys' fees. *See generally* Prayer for Relief, ¶¶ 8, 13, 18, 23, 28, 33, 38, 43. Attorneys' fees are properly included in determining the amount in controversy if the law under which the plaintiff has brought suit allow for their recovery. *See Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."); *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018) (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016)) ("The amount in controversy may include 'damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes.'").

46. Here, if Plaintiff were to prevail on any of her claims, she arguably would be entitled to recover reasonable attorneys' fees. *See* Cal. Lab. Code 1194(a) (attorneys' fees on minimum wage and overtime claims recoverable); *Betancourt v. OS Restaurant Servs., LLC*, 83 Cal. App. 5th 132, 134 (2022) (awarding attorneys' fees for meal and rest break claims and waiting time penalties); Cal. Lab. Code § 226(e)(1) (attorneys' fees on wage statement penalty claims recoverable). The potential attorneys' fees at issue in an action run through the end of the suit. *See Fritsch*, 899 F.3d at 794 ("[A] court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.").

47. Here, Defendants reasonably estimate that Plaintiff's counsel has spent and will spend time on the following case-related items, if litigated through trial, which total over 150 hours: (i) conducting an initial fact investigation and drafting the complaint (10 hours); preparing for and participating in the Rule 26(f) conference and drafting the Rule 26(f) report (3 hours); preparing for and participating in an initial case management conference (2 hours); propounding written discovery (2 hours); reviewing case documents, including personnel, time, and pay records (3 hours); responding to written discovery (5 hours); preparing for and defending Plaintiff's deposition and preparing for and taking various witness depositions (35 hours);

opposing motion for summary judgment (25 hours); preparing for and attending ADR session (8 hours); work on pre-trial related submissions, including pre-trial conference, memorandum of contentions of fact and law, witness lists, exhibits lists, final pre-trial conference order, etc. (40 hours); 2-day trial (20 hours).

48. Courts in this circuit have found that estimates of attorney time ranging between 100 to 300 hours in employment cases is reasonable. *See, e.g.*, *Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Swans v. Fieldworks, LLC*, 2023 WL 196918, at *3 (Jan. 17, 2023) ("[A]n attorney handling an individual wage-and-hour case typically spends far more than 100 hours on the case."). Further, the plaintiff's bar has sought and been awarded fees that exceed $100,000 in individual wage and hour cases. *See, e.g.*, *Betancourt*, 83 Cal. App. 5th 132, 134-39 (2022) (claiming over 800 hours and $580,000 in fees and ultimately awarded $280,000 in fees for meal and rest break, waiting time penalty, and wage statement penalty claims where the plaintiff only recovered $15,375); *Baker v. Tech Data Corp.*, 2022 WL 1080944, at *2 (C.D. Cal. Apr. 11, 2022) (finding "an estimate of 200 hours through trial is conservative and appropriate" in an individual wage and hour case and that more than $100,000 in fees was at issue for purposes of the amount in controversy); *Boyce v. Indep. Brewers United Corp.*, 2017 WL 2377107, at *1 (N.D. Cal. June 1, 2017) (claiming over $200,000 in fees had plaintiff prevailed at trial in an individual wage and hour action).

49. Although Defendants deny Plaintiff's claim for attorneys' fees, for purposes of removal, Defendants reasonably assume that Plaintiff's counsel's fees through trial could reach or exceed $82,500.00. Plaintiff's counsel has recently represented to courts in fee motions in class actions that Mr. Moon's hourly rate is $725.00 per hour (*Ramirez v. Markwins Beauty Prods.*, 2023 Cal. Super. LEXIS 22091, *10 (Cal. Sup. Ct. Apr. 4, 2023); *Lopez v. Villagrana Logistics*, San Bernardino Superior Court, Case No. CIVDS2022538, Declaration of Kane Moon in Support of Plaintiff's Motion for Final Approval of Class and PAGA Action Settlement (11/16/2023). Plaintiff's counsel has also recently represented to courts in in fee motions in class actions that

associates with comparable experience to S. Phillip Song and Stanley J. Park have rates of $375 per hour. In *Lopez v. Villagrana Logistics*, San Bernardino Superior Court, Case No. CIVDS2022538, the Declaration of Kane Moon filed in support of Plaintiff's Motion for Final Approval of Class and PAGA Action Settlement (11/16/2023) stated that Charlotte Mikat-Stevens' hourly rate was $375 per hour. Ms. Mikat-Stevens was in her fourth year of practice in at that time; S. Phillip Song is currently in his fifth year of practice and Stanley J. Park is currently in his third year of practice. The average between Mr. Moon's rate of $725 per hour and the approximate rate for Mr. Song and Mr. Park of $375 per hour is $550 per hour. Accordingly, attorneys' fees at issue add at least another $82,500.00 to the amount in controversy (150 hours x $550/hour = $82,500.00).

50. Based on the foregoing calculations, the minimum total amount placed in controversy by Plaintiff's claims are as follows:

| Claim | Amount in Controversy |
|---|---|
| Meal Breaks | $1,886.00 |
| Rest Breaks | $1,886.00 |
| Overtime | $3,536.25 |
| Waiting Time Penalties | $5,100.00 |
| Wage Statement Penalties | $550.00 |
| Attorneys' Fees | $82,500.00 |
| **TOTAL:** | **$95,458.25** |

51. Accordingly, the Court has jurisdiction over this action based on diversity jurisdiction.

### IV. THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

52. Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1441(a) because this action was originally brought in the Superior Court of the State of California, County of San Mateo. Therefore, this District encompasses the county in which this action has been pending since its inception.

53. Defendants will promptly serve Plaintiff with this Notice of Removal and will

promptly file a copy of this Notice of Removal with the Superior Court of the State of California, County of San Mateo, as required under 28 U.S.C. § 1446(d).

54. If any question arises as to the propriety of the removal of this action, Defendants respectfully request the opportunity to present a brief and oral argument in support of their position that this case is removable.

55. By this Notice of Removal and the Exhibits attached hereto, Defendants do not intend to make any admissions of fact, law or liability relating to the claims in the Complaint, and expressly reserves the right to make any and all defenses and motions necessary in its defense against Plaintiff's allegations.

**WHEREFORE,** Defendants respectfully request that this action be removed from the Superior Court of the State of California in and for the County of San Mateo to the United States District Court for the Northern District of California, and that all proceedings hereinafter in this matter take place in the United States District Court for the Northern District of California.

Dated: April 4, 2024                                MORGAN, LEWIS & BOCKIUS LLP

By _____*/s/ Andrew P. Frederick*_____
Andrew P. Frederick
Joseph R. Lewis

Attorneys for Defendants
JANCO FS 2, LLC, JANCO FS 3, LLC
and JANCO FS 4, LLC